Good morning, your honors. My name is Glenn Cartlidge, and I represent Michael Bowen. Before I get into the argument, I need to alert the court to the following. I have been mailing my brief and reply brief to the petitioner, have been having extensive telephone conversations with him. He is in Wisconsin on supervised release. I spoke with him last night, and it appears that he is still unclear about the exact dates that I have cited in my brief. The exact date of what? The exact dates of the illness, the hospitalization, and so on. As this court is aware, we've had some difficulties in this case because of the lack of a record before us. Neither the United States nor I have a complete record, nor does the district court. But in light of what he has said to me last night, and that is that I am aware that an illness occurred from 1996 early in the year until up in 2000, whereas he had a tumor in his head about six inches long. I can't really tell this court anything on the record because I don't have a record. And I don't want to mislead the court. I don't want my client to have. And I do not think he has been misleading me. I do think he's still suffering some of the effects of this illness that he had. And so what I would ask the court to do is to give us a remand based on Waylon Hunt and let us go back to the district court and clear all this up and see if he really is entitled to equitable tolling. Well, now, as I understand it, there is a problem of 34 months total. Is that right? That's correct, Your Honor. And it seems to me that there probably is some tolling available. But by my calculations, I might find about 14 months out of the 34. How do we get to 34? For example, it seems to me that there's five months in 1997, which I guess from December 1996 when Lawyer Wolf died until about April of 1997. Arguably, there's tolling there. And then there's probably another tolling surrounding the surgery and the hospitalization. But I only get about nine months for that. So how do we get to 34? Well, again, with the proviso that I'm not entirely clear on the facts about when this operation was, he began suffering in 1996 from a brain tumor. He was incoherent for quite a bit of time. He also got a systemic infection after that and was immobilized. It's my understanding that it started in early 1996 and went through 2000. It was filed in February of 2000. Also, the other part of it is that the record and the funds were tied up in the state bar until February of 2000. So not only did you have an incoherent client, you had no money and no record. We still don't have the record. We don't know where it is. When you say you don't have the record, the record from who was supposed to made where? Well, when Wolf died, all of his files went to somewhere, and we've never found them since. So those are gone forever? I mean, you're never going to get those. That's true, Your Honor. Well, so what record are you looking for that you think you're going to get that's going to clear things up? That's my question. Me, too. Well, I think what we need are the original files that Wolf had to see whether he was ineffective or whether he had any of the medical records that we don't have. Can they be found? Pardon? Can they be found? I don't think so, Your Honor. Then it wouldn't be futile to go back to the district court to search for something you know can't be found? No, I'm not going back to the district court for that. What I want to go back to the district court for is to see the extent of the brain team. I know that. So I'll get back to my original question. How are you going to find that out? My question was, well, what records from where that who was supposed to have made are you looking for that you expect to get? I don't expect to get those, Your Honor. You don't expect to get any records. How do you expect to show, you know, the facts necessary for Tole? Well, the facts that we want to show when we go back to the district court are we want to show that there was a conflict of interest between the attorney that was assigned to the 2255 case. We want to show that there was a the comings and goings of the other various attorneys. For example, he was appointed two attorneys for a length of time after Wolf died who didn't know anything about the case. My question is, I mean, I mean, what records are available that you believe will show this? I think those are witnesses that we need to put on in an evidentiary hearing. Your Honor. Do you have any showings from these witnesses? Any no reported testimony? No, Your Honor. We were dismissed at the district court. I was not counsel of record at that point because of a tolling. So there is no record in this case. But have you done a calculation that even if on remand you were able to depose Boyers, he's the lawyer that you're talking about who had the conflict, right? Yes, Your Honor. Okay. And you were to get the evidence that you think somehow you might be able to ascertain. Have you done any kind of calculation as to how many months giving a client the benefit of doubt? All of those facts you hope to find would entitle him to have subtracted from 34 months? Well, Your Honor, yes, I have. I see that I only have three minutes left on here, and I'd like to reserve those, but I'll answer your question as quickly as I can. I see that he has from 1996, sometime early in the time, until sometime late in 2000, that he's entitled to equitable tolling because of his illness and because of the other factors. For that entire period? Yes. I'd like to reserve the rest of my time for remarks. You may do so, counsel. That's fine. We'll hear from the government. Mr. Bork. Good morning, Your Honors. I'm Robert Bork with the United States Attorney's Office. I would disagree that so much of the time can be considered to have tolled. There clearly are some things that happen that's dependent on the route of his control. Well, the question for me is not so much, you know, on this record how much time can be tolled, but whether or not he's entitled to an evidentiary hearing to try to show what can be told. In other words, no hearing was ever held. This is on the pleadings. It was just dismissed. That's correct. Don't you think he should be given an opportunity to, you know, to show tolling? Well, looking at the two grounds that he seems to be raising basically is his lawyer's mistakes and his mental incompetence. Addressing that last one first, I would note that in February 2000, when the 2055 was finally filed, there was an affidavit signed by the defendant in there that specifically talked about he exchanging some 20 letters between him and his attorney and some 30 phone calls talking about this matter. He does mention an operation. He does not mention any incapacity, inability to think, or any other problems to communicate with his lawyer. His lawyer and his affidavit. So you can't tell on this record, you know, whether he's entitled to tolling. But the way that developed, isn't that the usual way to do it? Is it at an evidentiary hearing? Well, my opinion is, Your Honor, that Attorney Boyers was well aware of the fact that tolling was a crucial element. He was aware of the Beeler case. Of course, Beeler then was followed up by other cases that talked about incompetence being a ground for tolling. It's never mentioned by him, and it's not mentioned by his client in February 2000. It's never mentioned. What's never mentioned? The alleged incompetence, the medical incompetence, is never mentioned by either the defendant or his counsel. And I really think if it was there, it would have been mentioned. I'm not saying the man didn't have medical problems. The issue is that he's so serious that he could not think or otherwise help his attorney remember dates, et cetera, especially during an entire four-year period. I just don't think there's evidence of that. Now, as to the hiring of the Attorney Boyers, I think the defendant also fails on diligence grounds there. Again, he is retained supposedly in February of 1997, and yet in that letter he has a retainer agreement. And I would note that that retainer agreement was not signed by the defendant and his mother until February 1998. That's at page 179 of the record. So we have a period from almost nine months where the defendant is retaining an attorney and doesn't even bother to sign the agreement so the attorney can enter his appearance on the record. That's all attributable to him. That's all pre-1999, and for whatever reason, his mother and he did not bother to sign that agreement. And, of course, the time period from then until the actual filing, and the actual filing, I think clearly that is attorney error. He recognized the problem and either chose not to petition before filing or didn't make a competent argument before. And so in that period of time, I also think it's not tollable. So I think on the record we have that it is sufficient to affirm the district court. Thank you. Thank you, counsel. Ms. Cartlidge, you have some reserved time. Thank you, Your Honor. Do you want to respond to that failure to ---- Excuse me. Do you want to respond to Mr. Bork's argument that there's no showing with respect to the medical incompetence? Well, I think he mentioned that he was in the hospital and he had had an operation is my recollection of the record. Yeah, but we're dealing with documents here. I don't think there's anything in the brief as to why there was such a delay in signing the retention letter. Excuse me. I'm sorry. I don't think there's anything in the appellant's brief explaining why there's a delay in executing the retention letter of the lawyer Boyers. That was when he was in the hospital. What I may not have made clear in the brief, but what I meant to make clear was this man was in the hospital for an extended amount of time. I don't want to argue that on the exact dates because I'm not clear on the exact dates. I do know that he was hooked up to wires for three months, that he was sent to an outside ---- We're not getting into exact dates. You know, it's not 34 months. He was in the hospital for two and a half years, Your Honor, and he ---- Continuously? Pardon? Continuously? Continuously, and that is in the brief. He was in the hospital for two and a half years, and he signed himself out against medical advice, not because the doctor said he was free to go back. And before he went into the hospital, he was incoherent while he was in the prison, and he wasn't sent straight to Missouri. He was sent to an outside hospital where he was evaluated. When you say he was in the hospital, does that include the clinic at the prison, or does that include the outside hospital? That's the outside hospital. That's my information, but I hesitate completely telling the court what the exact dates of this are. One other thing I'd like to bring up to the court is that the negligence lawyer argument, it seems to me to be flawed in this case because it's not really emphasized by what the lawyer did or didn't do in this case. It's really about what his personal conduct is, whether he was negligent or not. And I think if the lawyer here had had a brain tumor as Michael Bowen had, we wouldn't be standing here. And I'd like to please request that the court highly consider sending this back for a remand under Whalum Hunt. All right. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, Matz